JONES, JUDGE:
At the hearing of this claim on March 19, 1973, it was determined that the injury complained of occurred on December 11, 1969, and not on December 18, 1969, as alleged in the petition, and as the petition was filed on December 17, 1971, it was conceded by counsel that the claim of Millard Rinear for medical care and treatment of his daughter was barred by the Statute of Limitations and therefore the same was dismissed. Linda Sue Rinear, having been an infant at the time of her injury and since having attained her majority, was not barred from prosecuting her claim in her own right.
On December 11, 1969, Miss Rinear was a student at Concord College, at Athens, in Mercer County, West Virginia, an institution of higher learning under the control, supervision and management of the respondent. She was engaged in an organic chemistry laboratory class along with some twenty other students. The assignment was an experiment in the nitration of benzine and during the course of the experiment being conducted by one of the other students, an explosion occurred causing glass and other materials to be thrown about the classroom resulting in injuries to several students, including the claimant. The petition alleges that there was not proper faculty supervision of the experiments at the time the explosion occurred and that such failure on the part of the respondent’s agents, servants and employees was negligence directly and proximately causing injury to the plaintiff.
*291 The organic chemistry course was divided into three lecture periods a week on Monday, Wednesday and Friday, and on Tuesday and Thursday there was a three-hour laboratory class at the beginning of which the instructor, Professor Lucile Dunlap Bird, discussed the experiment assigned for that day. Each student had a workbook describing the procedure to be followed in each experiment. Admittedly, the nitration of benzine experiment was known by both instructor and students to be somewhat hazardous. Both the instructor and the claimant testified that the class was warned of the danger of an explosion if the ingredients of the experiment were heated above a certain temperature or permitted to boil dry; and the workbook instructions further warned: “Collect the portion boiling at 200°-215°, but do not go above this temperature nor distill to dryness, because the small quantity of residue contains dinitrobenzene, which may decompose vigorously at high temperature.”
The claimant contends that the laboratory class was very loosely supervised. A student assistant was assigned to the class and he helped set up equipment, furnished necessary supplies and generally was available for questioning or other assistance but apparently was out of the laboratory for one reason or another at frequent intervals. It appears that he was not present in the laboratory at the time of the explosion but was on the same floor. There is a conflict as to how much supervision was afforded, the claimant saying there was practically none and Professor Bird averring that there was general supervision and instruction but not continuous surveilance of any individual experiment.
These students were not children. This was an advanced course, all of the students having had an introductory first year course in chemistry and considerable laboratory experience. The claimant was twenty years old and the perpetrator of the explosion was a graduate of the University of Tennessee and had been in the Army for three years. The claimant contends that Mike Scott, whose distilling flask exploded, had a reputation for recklessness known to the faculty and should have been watched or restrained in some way. Professor Bird testified that she had no knowledge of such a reputation and to the contrary thought Mike Scott a very responsible student.
In any event, Mike Scott did blow up the place and he was severely injured. There is no positive evidence of the cause of the explosion but circumstantially it appears a reasonable certainty that despite ade *292 quate warnings, Mike Scott let his experiment boil dry. The claimant’s partner, Carrie Shearis, was painfully injured and the claimant assisted and went with her to the infirmary. The claimant did not know that she herself was hurt but while at the infirmary discovered a small amount of blood on her left temple and a cut was cleaned and a band-aid applied. Later she experienced numbness of the left side of her face and became very apprehensive. The next day she went to Dr. J. I. Markell in Princeton, West Virginia, who removed a fragment of glass from her left temple. He diagnosed her injury as temporary nerve damage, examined her on two other office visits and recommended that she see a specialist. The claimant finished the school term and enrolled in a medical technology program at the Beckley Appalachian Regional Hospital at Beckley, West Virginia. She experienced recurrent swelling and numbness of the left side of her face and was treated at the Emergency Room of the Hospital on three occasions. On October 19, 1970, the claimant returned to her home in New Jersey where she consulted a neurosurgeon. X-rays were taken of her skull and Dr. Donahue’s report contained the following statements: “I felt that the problem was one of anxiety and tension and there was no intrinsic damage to the central nervous system.”; and “I told Linda following my first examination that there would be no reason for her to return to this office, and reassured her that nothing serious would arise from the accident in which she was involved.”
This was not an unusual experiment. Professor Bird testified that it was performed by chemistry students every place and was in every lab manual she knew of. She further testified that the laboratory assistant generally was in the laboratory in a supervisory and instructional capacity, but that his duties took him to other parts of the building for equipment, chemicals or other supplies. Both she and the assistant checked out experiments and she was in the lab frequently. However, there were many times, as at the time of the accident, that neither she nor her assistant was in the laboratory.
There is considerable conflict in the testimony as to how much supervision of the particular experiment was furnished by the respondent’s agents and employees. There also is disagreement about how much supervision was reasonably required. Considering all the circumstances it is hard to say that there was such a positive neglect of duty on the part of Professor Bird or her assistant as would con *293 stitute negligence and create a moral obligation upon the State to pay damages to the claimant.
However, assuming some negligence on the part of the respondent, we are of the opinion that the lack of supervision complained of could only have been a remote and incidental cause of the claimant’s injury and not the efficient proximate cause thereof. The facts and circumstances as developed by the testimony of witnesses for both parties in this case convinced the Court that the carelessness of Mike Scott was the proximate cause of the explosion and the resultant injury to the claimant. It is our judgment that the claimant has not proved the legal liability of the State and where no legal obligation exists there may be no moral obligation. Therefore, this claim is disallowed.
Claim disallowed.